Wilford L. Hamann and Dolores G. Hamann v. Commissioner.
Hamann v. Commissioner
Docket No. 524-62.
United States Tax Court
T.C. Memo 1964-319; 1964 Tax Ct. Memo LEXIS 19; 23 T.C.M. (CCH) 1979; T.C.M. (RIA) 64319; December 15, 1964
*19 George L. Ginger, David Scott Bldg., Detroit, Mich., for the petitioners. Carl W. Kloepfer, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined a deficiency in petitioners' income tax for 1959 in the amount of $222.81. Petitioners filed an amended petition wherein they claimed an overpayment in the amount of $742.77. The issues are (1) whether the amount of $888.15 claimed by petitioners as automobile depreciation in the year 1959 is deductible as an ordinary and necessary business expense, and, (2) whether petitioners were entitled to claimed itemized deductions in an amount exceeding the standard deduction of $1,000. Findings of Fact Some of the facts have been stipulated and they are found accordingly. Wilford L. Hamann and Dolores G. Hamann are husband and wife. The live in Royal Oak, Michigan, and they filed their joint income tax return for 1959 with the district director of internal revenue at Detroit. In this return they reported Wilford's salary income from General Motors Corporation in the sum of $7,951.68 and Dolores' salary income from the United Motors Service Division in the sum of $4,846.81. *20 Also in this return they did not itemize deductions but instead took the standard deduction of $1,000. However, on this return they took a deduction for depreciation of a Chevrolet sedan in the amount of $888.15, explaining that the car was a business asset. Respondent, in his notice of deficiency dated November 30, 1961, disallowed the depreciation deduction in the amount of $888.15. This disallowance results in the deficiency determined by respondent. In their petition filed February 16, 1962 petitioners alleged error in respondent's disallowance of said depreciation deduction. During the year 1959 Wilford drove the automobile back and forth from his residence to his place of employment, a daily round trip of approximately 30 miles. General Motors maintained a pool of automobiles for use by its employees. Wilford's position involved his maintaining contacts with packaging concerns in the Detroit area and performance required some use of an automobile. He could requisition a company car from the car pool or he could drive his own car and be reimbursed at the rate of 6 cents a mile by his employer. It is stipulated that during 1959 Wilford was reimbursed in the amount of $42 by *21 his employer for expenses incurred in the operation of his automobile during the year 1959. During the year 1959 he drove his automobile a total of 700 miles on company business which was about 5 percent of the total mileage placed on the car by Wilford that year. By an amended petition filed April 6, 1964 (the day before trial) petitioners claimed itemized deductions for the year 1959 in the total amount of $4,770.44. The itemized deductions claimed by the petitioners for the year 1959 included the following: Type of Deduction
Amount
Charitable Contributions
$1,268.00
Real Estate Taxes
253.74
Sales Taxes
256.00
Gasoline Taxes
86.00
License Plates
23.10
Medical Expenses (allowable amount)
1,623.60
Automobile Accident
100.00
Professional Periodicals
240.00
Special Training
670.00
Legal and Audit Fees
250.00
Total
$4,770.44
The total allowable itemized deductions claimed by petitioners for the year 1959 did not exceed the maximum standard deduction of $1,000. Opinion It is stipulated that the Chevrolet on which petitioners took depreciation deduction was acquired by them in January 1955 at a total cost of $1,930.17. On their income tax *22 return they claimed a total depreciation on what they called "Straight Dec. Bal." of $1,268.78 and allocated 70 percent of that total to business use, and thus arrived at the deduction figure of $888.15. However, Wilford testified he drove the car to and from work and on two pleasure trips to Virginia and in all about 12,000 to 14,000 miles that year. The only evidence of any business use of the car would be the 700 miles for which Wilford received reimbursement at the rate of 6 cents a mile from his employer. It is impossible to determine how petitioners computed the depreciation on their automobile. If "Straight Dec. Bal." stands for Straight Declining Balance, then this method of depreciating was not defined in the testimony or in petitioners' briefs. If petitioners were using a straight line method of depreciation they failed to specify the term of years over which they were spreading the useful life of their automobile. Respondent's determination was presumptively correct. The burden was on petitioners to show they were entitled to the depreciation deduction of $888.15. The burden was not sustained. All we have is an unexplained computation and evidence the car was used 95 percent *23 of the time for personal use instead of the claimed 70 percent of time for business use. We uphold respondent's determination. As pointed out earlier, petitioners did not claim itemized deductions on their 1959 income tax return. And they did not claim such deductions in their original petition filed in February of 1962. It was not until two years later and just before trial that petitioners by an amended petition claimed the itemized deductions. [1]
Wilford was the only witness. Virtually the only evidence offered to substantiate the listed expenditures was a book containing entries which appeared to be the same amount claimed for some of the items. The book is useless for verification purposes. The entries therein were not made until about a year and a half after the 1959 return was filed. Some of them were made by Dolores who did not testify. No receipts, statements, bills, canceled checks, or other documentary evidence showing such expenditures were introduced. Petitioners did not establish *24 a single dollar of alleged medical and dental expenses though it would seem such expenditures would have been readily susceptible of proof. There was no evidence of the names of doctors or hospitals to whom payments were made. There was no verification of the charitable deductions. It fairly appears from Wilford's testimony that he merely picked a figure of about 10 percent of their income and spread it around amongst the organizations to which he could remember sending some contributions. Respondent, recognizing the difficulty of establishing sales tax expenditures, conceded at the trial that petitioners $256expended for sales tax during 1959. But part of the automobile license fees claimed were for a license for Wilford's mother's car. Wilford could give no explanation at all of how he arrived at his estimate of $670 for special education and training and $240 for research periodicals during 1959. He said "I don't recall. That was just an estimate. I would rather leave it up to the Court as to what they wish to do with those two items." We just can do nothing with them for there is no evidence on which to base allowance. The real estate taxes Wilford testified he paid were taxes *25 imposed on his mother's property and hence not deductible by petitioners. Eugene W. Small, 27 B.T.A. 1219. It would serve no useful purpose to continue a review of the testimony with respect to the claimed itemized deductions. There was just no evidence of any substantive value to verify such claimed deductions in any amount that would exceed the $1,000 standard deduction. We hold against petitioners on the pleaded issue with respect to the so-called itemized deductions, and for respondent on his determination of deficiency based on his disallowance of the automobile depreciation deduction. Decision will be entered for the respondent. Footnotes
1. It should be said, however, that petitioners filed what they called an "Amended Return" for 1959 (received by respondent in July of 1961) wherein they claimed itemized deductions.↩